Our File No. 2003767-KMO/DBM:lmt

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| CLARICE MILLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 1712 |
| | ) | Judge Pallmeyer |
| XO COMMUNICATIONS, INC., and | ) | |
| LEONARD LEEDS and LEEDS, | ) | |
| MORELLI AND BROWN, P.C., and | ) | |
| MICHAEL YOUNG, | ) | |
| | ) | |
| Defendants. | ) | |

**FILED AUG - 8 2003**

## NOTICE OF MOTION

TO: Ronald S. Samuels
Ronald S. Samuels & Associates
29 South LaSalle Street
Chicago, IL 60603

Robert E. Arroyo
Jackson Lewis LLP
320 West Ohio Street - Suite 500
Chicago, IL 60610

**PLEASE TAKE NOTICE** that on **August 19, 2003, at 9:30 a.m.**, the undersigned shall appear before the **Honorable Judge Pallmeyer** or any judge sitting in her stead in **Room 2119** of the United States District Court for the Northern District of Illinois, Eastern Division, located at 219 South Dearborn Street, Chicago, Illinois, and then and there present to the Court **DEFENDANT, MICHAEL YOUNG'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) AND (6)**, a copy of which is attached hereto and hereby served upon you.

O'HAGAN, SMITH & AMUNDSEN, L.L.C.

By: _____
One of the Attorneys for Defendant
Michael Young

Kevin M. O'Hagan (ARDC 6211446)
Daniel B. Meyer (ARDC 6237685)
O'Hagan, Smith & Amundsen, LLC
150 North Michigan Avenue - Suite 3300
Chicago, Illinois 60601
(312) 894-3200
FAX: (312) 894-3210

## PROOF OF SERVICE

The undersigned, a non-attorney, certifies that she mailed a copy of this Notice to the attorneys listed above at the addresses listed above, by depositing the same in the U.S. Mail at 150 North Michigan Avenue, Chicago, Illinois, before 5:00 p.m. this **8th day of August, 2003**. Pursuant to 28 USC Section 1746(2), I certify under penalty of perjury that the foregoing is true and correct.

_Loraine M. Inorio_

Our File No. 2003767-KMO/DBM:lmt

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| CLARICE MILLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 1712 |
| | ) | Judge Pallmeyer |
| XO COMMUNICATIONS, INC., and | ) | |
| LEONARD LEEDS and LEEDS, | ) | |
| MORELLI AND BROWN, P.C., and | ) | |
| MICHAEL YOUNG, | ) | |
| | ) | |
| Defendants. | ) | |

FILED
AUG - 8 2003

### DEFENDANT MICHAEL YOUNG'S MOTION TO DISMISS
### PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) AND (6)

The Defendant, Michael Young, through his attorneys, O'Hagan, Smith & Amundsen, LLC, requests that this Court enter an Order dismissing the Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6). In support thereof, Michael Young states:

### I.   Summary

Michael Young ("Young") is a Defendant in this litigation because he was appointed to serve as a special master in an employment discrimination class action. In that role, he was asked to determine the amount each plaintiff in the class would receive from a settlement. The Plaintiff is dissatisfied with the amount she received.

The Complaint should be dismissed, pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6), for the following reasons, each of which standing alone supports dismissal:

- It fails to state a cause of action against Young: he is protected by the doctrine of absolute quasi-judicial immunity.

1

- It violates Federal Rule of Civil Procedure 8; it is not a "short and plain" statement of the Plaintiff's claims. Though the Complaint may be short, it is by no means plain. To the contrary, it is quite confusing.

- Young is not subject to the personal jurisdiction of this Court.

## II. Facts

The facts are difficult to discern from the face of the Complaint. Despite the fact that the Plaintiff named four Defendants, the Complaint contains only one Count.[1] *See generally,* Plaintiff's Complaint, attached hereto and incorporated herein as Exhibit "A." One paragraph near the end of the Complaint, Paragraph 42, appears to allege various violations of law, but, with one exception, it is not clear which violations pertain to which Defendants.

Having said that, it appears that the Plaintiff, a former employee of XO Communications, Inc. ("XO"), brought a claim against XO for race discrimination. Compl., ¶¶ 7 and 8. It is unclear from the Complaint whether a complaint was filed, or whether the dispute resolved prior to a complaint having been filed.

Her attorney was Leonard Leeds of the law firm of Leeds, Morelli & Brown, P.C. (collectively "Leeds"). Compl., ¶ 9. Leeds filed the claim on behalf of the Plaintiff and ninety-seven other individuals[2], and the parties settled the matter in May 2002.[3] Compl., ¶¶ 10 and 11. As part of the settlement agreement, Young was retained as special master to determine the amount each individual would receive from the settlement amount. Compl., ¶ 18. Young awarded the Plaintiff a portion of that settlement amount. Compl., ¶ 13.

---

[1] Note, however, that the one "count" is not designated as such. The Complaint contains headings for Jurisdictional Allegations and Factual Allegations, but no further headings.

[2] At certain points in the Complaint, the Plaintiff alleges that Leeds represented ninety-*six* – not ninety-*seven* – other individuals. *See, e.g.,* Compl., ¶ 38.

[3] Young believes that the amount of the settlement was to remain confidential. Though the Plaintiff has since published the settlement amount in her Complaint, Young will not do so here.

2

As it pertains to Young, the Plaintiff alleges that she was forced to negotiate her settlement with Young,[4] and that Young did not disclose to her the formula he used to arrive at the award amount. Compl., ¶¶ 36 and 38. The Plaintiff further alleges that Young failed to advise her of the rights and benefits available to her. Compl., ¶ 38. She claims that Leeds "assigned/and or transferred the claims and the right to recover for the discriminatory acts to Michael Young." Compl., ¶ 20.

In another part of the Complaint, the Plaintiff alleges that the Defendants, without further description as to which Defendants, engaged in a joint enterprise of producing liability release documents that would require her to accept the "unconscionable agreements" or risk pursuing an action against XO on time-barred claims. Compl., ¶ 39. She goes on to allege that Mr. Young induced her to sign a Letter Agreement mentioned throughout her Complaint.[5] Compl., ¶ 40.

In other paragraphs unrelated to Young, the Plaintiff also alleges that she was terminated by XO in August 2000 as a retaliatory measure for filing the race discrimination claim, in violation of a non-retaliation letter sent by XO. Compl., ¶¶ 28-30. She alleges that she then called Leeds, who informed her that they could not advise her on any potential retaliatory discharge claim because, as part of the May 2000 settlement, they agreed to serve as a consultant to XO for a period of three years. Compl., ¶¶ 22 and 31.

As noted above, Paragraph 42 contains allegations that one might interpret as an attempt to set forth causes of action. It states, in full:

42.  That the defendants did the following:

---

[4] Young disputes this allegation, insofar as he never had any personal contact with the Plaintiff. See Affidavit of Michael Young, attached hereto and incorporated herein as Exhibit "B."

[5] The Plaintiff references Exhibit 2 for this proposition, but Exhibit 2 is actually a letter from Leeds, her former counsel, to his clients. In fact, a review of the Exhibits attached to the Plaintiff's Complaint fails to yield any Exhibits that can in any way be construed as being authored by Young. The Plaintiff's misrepresentation of her Exhibits further confuses even the most discerning reader of this Complaint.

    a.    Discriminated against the plaintiff in employment because of her race, age and her sex.

    b.    The Defendant XO discriminated against the Plaintiff in retaliation for engaging lawyers to attempt to secure her employment rights free of discrimination,

    c.    Converted the plaintiff's funds, rights and benefits by knowingly commingling them with other persons funds, rights and benefits,

    d.    Converted the plaintiff's funds by exercising dominion and control over the rights of benefit and ownership over the employment rights and the property of the plaintiff,

    e.    Breach of fiduciary relationship that existed between an attorney and his client,

    f.    Breach of fiduciary (including loyalty) relationship between attorney and client by attempting to deliver legal services to known adversaries, and persons with conflicts of interest, and using superior legal knowledge and skills to cover up the breach,

    g.    Violate the code of Professional Conduct for lawyers in the states of Illinois, new [sic] York and Virginia by:

        1.    Practicing law in Illinois,

        2.    Violation of the code of professional conduct in executing legal affairs in contravention of the Code of Professional Conduct of Illinois, New York and Virginia,

    h.    Breach of Contract

    i.    Conspiracy in all of the above recitations.

Compl., ¶ 42.

The Plaintiff then offers her prayer for relief, which includes a jury trial, all benefits of employment (wages, salary, benefits and other compensation), liquidated damages (for wages, salary, benefits and other compensation), reinstatement as an employee, punitive damages (for outrageous conduct and intentional infliction of emotion distress), and costs and attorney's fees.

4

**III. Law**

    **A.    The Plaintiff's Complaint Should Be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6) Because It Fails To State Any Claims Against Young.**

        **1.    Standard of Review Under Federal Rule of Civil Procedure 12(b)(6).**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal of an action is justified when "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-6 (1957). Generally, when considering a motion to dismiss, "all well-pled factual allegations in the complaint" are accepted as true. Perkins v. Silverstein, 939 F.2d 463, 466 (7th Cir. 1991). The problem with the instant Complaint is that it fails to contain any "well-pled factual allegations."

Federal Rule of Civil Procedure 8(a) states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

The Plaintiff's Complaint should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).

        **2.    Young Is Protected By The Doctrine Of Absolute Quasi-Judicial Immunity.**

Young is immune from litigation concerning his role as special master because, in that role, he is protected by the doctrine of absolute quasi-judicial immunity.

            **a.    The Doctrine of Absolute Quasi-Judicial Immunity And Its Reasoning.**

The doctrine of absolute judicial immunity has been part of this country's jurisprudence for over one hundred years. Bradley v. Fisher, 80 U.S. (13 Wall.) 335 (1872). In addition, non-judicial officials whose official duties have an integral relationship with the judicial process also

5

are absolutely immune for their quasi-judicial conduct. *See, e.g.*, Imbler v. Pachtman, 424 U.S. 409 (1976).

In Ashbrook v. Hoffman, 617 F.2d 474 (7th Cir. 1980), the Court of Appeals for Seventh Circuit explained the rationale underpinning the doctrine of absolute quasi-judicial immunity:

> On one hand is the policy that an official making quasi-judicial discretionary judgments should be free of the harassment of private litigation in making those judgments. *Imbler*, 424 U.S. at 423, 96 S. Ct. at 991. On the other hand a nonjudicial officer who is delegated judicial duties in aid of the court should not be a "lightning rod for harassing litigation" aimed at the court. *Kermit Construction* [Corp. v. Banco Credito Y Ahorro Ponceno], 547 F.2d [1,] 3 [1st Cir. 1976]. Thus, if "acts, alleged to (be) wrongful, were committed by the officer in the performance of an integral part of the judicial process," Robichaud v. Ronan, 351 F.2d 533, 536 (9th Cir. 1965), then the officer is absolutely immune from suit.

*Ashbrook*, 617 F.2d at 476.

Various courts have applied the doctrine of absolute quasi-judicial immunity to assorted actors in the litigation process. The Seventh Circuit has applied the doctrine to private arbitrators. *See*, Tamari v. Conrad, 552 F.2d 778 (7th Cir. 1977); *see also*, Galuska v. New York Stock Exchange, 2000 U.S. App. LEXIS 6370 (7th Cir. 2000). Justice Scalia, concurring in Kalina v. Fletcher, 522 U.S. 118 (1997), also notes that the doctrine protects private arbitrators from liability. 522 U.S. at 132-33.

Application of this doctrine in favor of arbitrators is not particular to the Seventh Circuit; courts outside the circuit have also applied the doctrine to bar claims against arbitrators. *See*, Austern v. Chicago Board of Options Exchange, 898 F.2d 882, 886 (2d Cir. 1990). The *Austern* Court stated its rationale as follows: "individuals . . . cannot be expected to volunteer to arbitrate disputes if they can be caught up in the struggle between the litigants and saddled with the burdens of defending a lawsuit." *Id.*, *quoting*, *Tamari*, 552 F.2d at 781. This rationale led the *Austern* Court to hold that arbitrators, in contractually agreed upon arbitration proceedings, be

6

granted absolute immunity from liability from all acts within the scope of the arbitration process. *Austern*, 898 F.2d at 886.

In Wagshal v. Foster, 28 F.3d 1249 (D.C. Cir. 1994), the Court of Appeals for the District of Columbia Circuit used the doctrine to bar an action against a "case evaluator." The *Wagshal* Court used the terms "case evaluator" and "mediator" interchangeably, noting that "each acts as a neutral third party assisting the parties to a dispute in exploring the possibility of settlement, the principal difference being that implicit in the name: the case evaluator focuses on helping the parties assess their cases, while the mediator acts more directly to explore settlement possibilities." 28 F.3d at n.2, *citing*, Melinda Ostermeyer, Alternative Dispute Resolution Programs 6 (Superior Court of the District of Columbia, Multi-Door Dispute Resolution Division 1992). However one may perceive the distinction between mediators and case evaluators, mediators, too, enjoy the protections of absolute quasi-judicial immunity. *See, e.g.*, Mills v. Killebrew, 765 F.2d 69 (6th Cir. 1985).

Admittedly, it is not enough to simply say that arbitrators, mediators and the like are entitled to absolute quasi-judicial immunity. Rather, the federal courts have developed a two-prong test to determine whether a non-judicial actor is entitled to such immunity. This test asks (1) whether the conduct in question is the kind normally performed by a judge; and (2) whether the plaintiff was dealing with the judge, or person performing judicial or quasi-judicial acts, in his judicial capacity. *See*, Eades v. Sterlinske, 810 F.2d 723, 725-26 (7th Cir. 1987), *cert. denied*, 484 U.S. 847 (1987).

This is a functional analysis mandated by the United States Supreme Court in Forrester v. White, 484 U.S. 219 (1988). As the Northern District wrote in Primm v. County of DuPage, 1993 U.S. Dist. LEXIS 16 (N.D. Ill. 1993):

7

Under this approach, a court is to consider the nature of the function or activities being performed and to assess their relationship to the judicial process, keeping in mind the purpose for according persons absolute judicial immunity -- namely freeing the judicial process from the harassment and intimidation associated with litigation. *Forrester*, 484 U.S. at 225-26; *Kinkaid* [v. Vail,] 969 F.2d [594,] 601 (7th Cir. 1992); *Ashbrook*, 617 F.2d at 476.

Using this approach, the United States District Court for the Northern District of Illinois dismissed litigation against arbitrators, pursuant to the doctrine of absolute quasi-judicial immunity, in Uelsmann v. Wheaton, 1999 U.S. Dist. LEXIS 17182 (N.D. Ill. 1999). There, the plaintiffs attempted to name as defendants arbitrators serving as such under Illinois' mandatory arbitration program. The court dismissed the litigation as against the arbitrators, finding that they were protected by the doctrine of absolute quasi-judicial immunity.

### b.  Analysis Of The Doctrine In Terms Of This Litigation.

Applying the law and principles discussed above to the instant case, Young is protected by the doctrine of absolute quasi-judicial immunity. This conclusion is supported both by application of the functional analysis required by *Forrester*, and by the policy considerations that underlie the doctrine.

Addressing first the policy considerations, Young is engaged in the business of alternative dispute resolution; he serves as an arbitrator, mediator and special master in various types of litigation. Young provides services that are beneficial to the administration of justice in this country, and the judicial process gains from the involvement of Young and those like him. Should arbitrators and mediators similar to Young be subject to liability for the decisions they make while serving as such, the judicial process could very well lose those services. Those that choose to remain part of the alternative dispute resolution process, despite this potential for personal liability, will be forced to suffer the uncertainty of litigation over their decisions, which in and of itself is repugnant, but this uncertainty may also lead to decisions based not on facts

and logic, but on considerations of which party is more likely to initiate litigation against the arbitrator due an adverse decision. These concerns convinced the *Austern* Court to protect an arbitrator from liability under the doctrine of absolute quasi-judicial immunity. The Seventh Circuit in *Ashbrook, Kinkaid, Tamari, Galuska* and *Eades* concur with that result.

Analysis under the *Forrester* functional approach also leads to the conclusion that Young enjoys absolute immunity. Applying the first part of the two-prong test to Young's activities, he undertook activities of the kind normally undertaken by a judge. He was retained to determine the amount of money each plaintiff should receive from a settlement pot. This involved an analysis of the validity and strength of each plaintiff's claims, and determining from that analysis the proper apportionment of the settlement fund among all plaintiffs. Young's activities also comports with the second prong of the *Forrester* test, requiring that the Plaintiff relate to Young in Young's judicial capacity. The Plaintiff and Young had no relationship other than that of litigant-to-judge.

By naming Young as a defendant in this litigation, the Plaintiff has attempted to accomplish precisely what the federal courts prohibit: subjecting an independent arbitrator to the inconvenience and uncertainty of litigation directed towards him or her, concerning his or her decisions as a neutral. Public policy and the rule of *Forrester* and its progeny counsel against this litigation proceeding against Young.

3. **The Plaintiff's Complaint Fails To Set Forth A Short And Plain Statement Of The Claim Against The Defendants.**

The Federal Rules also require that "each averment of pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8(e)(1). This means that complaints must contain a "short and plain statement of the claim" that provides the defendants "fair notice" of what the claim is about and

9

"the grounds upon which it rests." Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168, 113 S.Ct. 1160 (1993). Only those complaints that notify the defendant of the claim and the relief sought to a degree sufficient to allow the defendant to formulate a response meet the notice pleading requirements of Fed. R. Civ. P. 8. Jackson v. Marion County, 66 F.3d 151, 153 (7th Cir. 1995).

Applying these concepts to the "Factual Allegations" found in the Complaint, those allegations violate Fed. R. Civ. P. 8(a)(2) and 8(e)(1). A dozen readings of the instant Complaint do not give the Defendants "fair notice" of what the Plaintiff's claim is about or "the grounds upon which its rests." *Leatherman*, 507 U.S. at 168. Here, the Complaint names four defendants, but does not contain a separate count for each Defendant. As such, each Defendant, and certainly Young, is left guessing which allegations pertain to which Defendant.

Compounding the confusing structure of the Complaint is Paragraph 42, which appears to set forth various and sundry causes of action. It begins "That the defendants did the following" without discriminating between Defendants. The Defendants cannot determine whether Young is charged with discriminating "against the plaintiff in employment because of her race, age and her sex", or whether XO is charged with "breach of the fiduciary relationship that existed between an attorney and his client." By the words of the Complaint, Young and XO are thus charged, but the Complaint fails to allege that Young employed the Plaintiff (which he did not), or that XO maintained an attorney-client relationship with her.

Just as confounding is her allegation of a conspiracy, when she fails to allege any facts that support a conspiracy, no matter how that term is defined. She also alleges a breach of contract, but the allegations contained in previous paragraphs are so confusing that one cannot discern the basis for such a cause of action, much less with whom the Plaintiff contracted. And

10

in what way did Young convert funds? Under what facts can one surmise that Young formed an attorney-client relationship with the Plaintiff? What rules of professional conduct did Young allegedly violate? These are just a few examples of why this Complaint is not a short and plain statement of the claim, but rather a confusing miscellany of conclusory allegations.

As an aside, the Plaintiff's "Jurisdictional Allegations" do nothing to clear the air, and actually add to the confusion created by the "Factual Allegations." For instance, she cites 42 U.S.C. 2001, which is part of Chapter 22 of Title 42 of the United States Code, said Chapter entitled "Indian Hospitals and Health Facilities Maintenance and Operation." The allegations in the Complaint do not provide the Defendants with any reason to believe that this matter involved the maintenance and operation of Indian hospitals, yet this statute is implicated in the opening paragraphs of the Complaint.

The Defendants are entitled to fair notice as to the grounds upon which the Plaintiff's Complaint rests. The confusing nature of this Complaint prevents the Defendants from receiving that "fair notice" and formulating a coherent response to the Complaint. It is not well-pled, and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

B. **Young Should Be Dismissed Pursuant To Federal Rule Of Civil Procedure 12(b)(2) Because The Court Lacks Personal Jurisdiction Over Young.**

Due to the manner in which the Plaintiff has drafted her Complaint, Young cannot determine whether this Court's *subject matter* jurisdiction arises from a federal question or from diversity jurisdiction. Certainly, certain "causes of action" – employment discrimination, for example – attempt to state federal claims, while others – for instance, breach of contract – attempt to allege only state law claims. Because Young cannot determine which of the various

11

"causes of action" are actually being brought against him, any analysis as to this Court's *personal* jurisdiction over him must be made in light of both state and federal principles.

The only allegations in the Complaint pertaining to this Court's personal jurisdiction over Young are as follows:

- In Paragraph 4, the Plaintiff alleges that the "defendant Michael Young does business in Chicago, Illinois and in New York."

- In Paragraph 6, the Plaintiff alleges that this "claim arose in the Northern District of Illinois" and that the "defendants have significant contacts with the district, the plaintiff resides within this district, and the events that gave rise to this cause of action occurred in this district."

The only other reference to Illinois contained in the Complaint (other than to amorphous assertions of violations of the state's rules of professional conduct) is found in Paragraph 7, where the Plaintiff alleges that she worked at XO's facility in Chicago.

The question of this Court's personal jurisdiction turns on these allegations.

1. **Illinois Courts Cannot Not Exercise Personal Jurisdiction Over Young And, Thus, This Court Cannot Exercise Personal Jurisdiction Over Young.**

In cases involving diversity jurisdiction, federal district courts may maintain personal jurisdiction over a defendant if and only if the state in which the district court sits could also maintain personal jurisdiction over the defendant. Klump v. Duffus, 71 F.3d 1368, 1371 (7th Cir. 1997), *citing* Wilson v. Humphrey's (Cayman), Ltd., 916 F.2d 1239, 1243 (7th Cir. 1990), *cert. denied*, 499 U.S. 947. Illinois may maintain personal jurisdiction over a defendant only to the extent permitted by Illinois statute, the Illinois Constitution and the United States Constitution. RAR, Inc. v. Turner Diesel, 107 F.3d 1272, 1276 (7th Cir. 1997).

The Illinois long-arm statute is found at 735 ILCS 5/2-209. Subsections (a) and (b) provide for personal jurisdiction over defendants that undertake certain acts within Illinois, or

over defendants present in or domiciled in, or incorporated under the laws of, the state. Subsection (c) of 5/2-209 also provides for personal jurisdiction over defendants "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." The Seventh Circuit, in *RAR*, commented that this catch-all essentially collapses the three bases for personal jurisdiction into two: state and federal constitutional analyses. *RAR*, 107 F.3d at 1276.

The Court also noted that Illinois case law discussing the limits of the exercise of personal jurisdiction under the Illinois Constitution is sparse and lacks definition, and that ultimately courts within the sphere of the Seventh Circuit must resort to analysis under the United States Constitution. *Id.*, 107 F.3d at 1276-77. As such, analysis of whether this Court may exercise personal jurisdiction over Young turns on federal principles of "fair play and substantial justice." *Id., quoting* International Shoe Co. v. Washington, 326 U.S. 310 (1945).

Analysis under the United States Constitution begins with *International Shoe*, wherein the Supreme Court required that a "defendant must have 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice".'" *Id.*, 326 U.S. at 316. The Seventh Circuit in *RAR* interprets *International Shoe* as follows:

> What that standard means in a particular case depends on whether the state asserts "general" or "specific" jurisdiction. Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." General jurisdiction, meanwhile, is for suits neither arising out of nor related to the defendant's contacts, and it is permitted only where the defendant has "continuous and systematic general business contacts" with the forum.

*RAR*, 107 F.3d at 1277 (*internal citations omitted*), *citing and quoting* Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8 and 416 (1984). Under this analysis, this

13

Court may maintain personal jurisdiction over Young if and only if: (1) the litigation arises out of Young's contacts with Illinois or (2) Young has maintained continuous and systematic general business contacts with Illinois.

This litigation does not arise out of Young's contacts with Illinois. As shown in his affidavit attached hereto as Exhibit "B," Young maintained no contact with Illinois in relation to this litigation. He did not visit Illinois as part of his duties as special master, nor did he contact, by any means – telephone, facsimile, hardcopy mail or electronic mail – anyone who was located in Illinois. Thus, this Court may not exercise specific personal jurisdiction over Young, as the Complaint together Young's affidavit fail to establish that the instant litigation arose out of Young's contacts with Illinois.

The Complaint also does not provide a basis for general personal jurisdiction, as it fails to contain any facts or allegations to support the inference that Young has maintained continuous and systematic general business contacts with Illinois. Young is a lawyer licensed by the State of New York and New York is where he practices as a neutral in dispute resolution. Without more, this Court does not have general personal jurisdiction over Young.

This Court is without personal jurisdiction – whether specific or general – over Young, and Young must therefore be dismissed from this litigation.

### 2. This Court Does Not Possess Personal Jurisdiction Over Young.

While a federal court sitting in diversity jurisdiction analyzes its personal jurisdiction over a defendant based on the law of the state in which it sits, a federal court presiding over federal questions conducts that analysis only under federal principles.

Here, those federal principles, as enunciated in *International Shoe* and *RAR*, were discussed in the preceding Section of this Brief. The analysis offered by Young in that regard

applies with equal force to the extent this Court finds itself presiding over this matter by virtue of one or more federal questions concerning Young.

In the end, neither 735 ILCS 5/2-209(a)-(c), the Illinois Constitution, nor the United States Constitution confer on this Court personal jurisdiction over Young, and Young should be dismissed for that reason, among others.

## C. Conclusion.

Pursuant to Fed. R. Civ. Pro. 12(b)(6), the Plaintiff's Complaint should be dismissed. *First*, Young is entitled to absolute quasi-judicial immunity in his role as special master. *Second*, the Complaint's confusing nature violates Fed. R. Civ. Pro. 8(a)(2), requiring a short and plain statement of the claims against the Defendants.

Pursuant to Fed. R. Civ. Pro. 12(b)(2), Young should be dismissed from this litigation because he is not subject to the personal jurisdiction of this Court.

Wherefore, the Defendant, Michael Young, requests that this Court enter an Order dismissing the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and for such further relief as this Court deems just.

Respectfully Submitted,

By: _____
Daniel B. Meyer
Attorney for Michael Young

Kevin M. O'Hagan (ARDC 6211446)
Daniel B. Meyer (ARDC 6237685)
O'Hagan, Smith & Amundsen, LLC
150 North Michigan Avenue
Suite 3300
Chicago, Illinois 60601
(312) 894-3200
FAX: (312) 894-3210

15